IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY BETH CAPERTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-21-880-STE |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____).

The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c). The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the case for further proceedings consistent with this Order.

### I.     PROCEDURAL BACKGROUND

Plaintiff applied for both disability insurance benefits (DIB) under Title II of the Social Security Act and supplemental security income (SSI) under Title XVI of the Act

on December 17, 2019, alleging disability beginning May 26, 2019. Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, (TR. 36-66), an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 15-29). The Appeals Council denied Plaintiff's request for review, (TR. 1-5), making the decision of the ALJ the final decision of the Commissioner.

## II.    THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity after her alleged onset date. (TR. 17).

At step two, the ALJ determined Plaintiff sufferers from the following severe impairments: epilepsy; depressive disorder; and anxiety disorder. (TR. 17).

At step three, the ALJ found that Plaintiff's impairments, considered individually or in combination, did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, including but not limited to any mental impairment listed in section 12.00 et seq. (TR. 21-24).

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to:

> Perform a full range of work at all exertional levels but with the following nonexertional limitations: Never climb ladders, ropes or scaffolds; Never exposure to hazards such as hazardous moving machinery, raw

chemicals or solutions, and unprotected heights; Work must be limited to simple, routine, and repetitive tasks; Occasional interaction with co-workers, supervisors, and public; and free of production rate pace.

(TR. 25).

At the second phase of step four, the ALJ concluded Plaintiff could not perform her past relevant work as retail store clerk, retail assistant manager or receiving clerk. (TR. 28).

At step five, the ALJ considered Plaintiff's age,[1] education, work experience and residual functional capacity (RFC) and concluded there were jobs existing in significant numbers in the national economy that she could perform. At the administrative hearing, the vocational expert (VE) identified three jobs from the *Dictionary of Occupational Titles* (DOT) that Plaintiff could perform: Merchandise marker, (DOT #209.587-034, a light, unskilled job with 129,000 such jobs existing in the national economy); Routing clerk (DOT #222.567-038, a light, unskilled job with 34,000 jobs existing in the national economy); and Mail sorter, (DOT #222.687-022, a light, unskilled job with 104,000 of existing in the national economy). (TR. 29). The ALJ adopted the VE's testimony and concluded Plaintiff was not disabled.

---

[1] At forty-five-years-old, Plaintiff is a "younger individual." *See* 20 C.F.R. 404.1563; 416.963. Generally, the younger an individual is, the more likely that individual can adjust to work other than his or her past relevant work. *See* Medical-Vocational Guidelines (the grids) 20 C.F.R. Part 404, Subpart P, Appendix 2.

### III. ISSUES PRESENTED

Plaintiff contends the ALJ erred in failing to explain why she accepted some, but not all, of the limitations identified in a medical opinion from Plaintiff's treating physician. Plaintiff further contends that the ALJ's step-five decision is not supported by substantial evidence.

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).

Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

Nevertheless, the Court must reverse decisions if the ALJ has simply picked out and relied on evidence that supports her conclusion without discussing relevant evidence to the contrary.

## V. ANALYSIS

The medical records demonstrate that Plaintiff was attended by Dr. Abdallah Dawod[2] and treated for acute physical problems as well as chronic mental disorders. (TR. 344-389). Dr. Dawod consistently diagnosed Plaintiff with depression and anxiety. In the later records, Dr. Dawod also diagnosed bipolar disorder, conversion disorder with seizures or convulsions, and dissociative convulsions. (TR. 349).

On September 1, 2020, Dr. Dawod completed a Mental Residual Functional Capacity Assessment. (TR. 507-509). In the "Summary Conclusions" portion of the assessment—a checkmark form—Dr. Dawod was required to assess the degree to which Plaintiff was impaired in the four areas of mental functioning described in paragraph B of each mental listing: understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.[3] The Mental Residual Functional Capacity Assessment

---

[2] The ALJ occasionally referred to Dr. Dawod as "Dr. Abdallah."

[3] Section 12.00 of Appendix 1 to Part 404 of the regulations contains the requirements for meeting a mental impairment listing. The "paragraph B" requirements are the same for depression, anxiety, and bipolar disorder. The rating scale for determining whether claimant meets a listing is different from the scale used on the more detailed Mental Residual Functional Capacity Assessment form. For purposes of step three, a claimant's mental impairment meets a listing if she satisfies the "paragraph A" criteria and is markedly limited in two of the four broad areas of mental functioning or extremely limited in one of the four areas.

form breaks down the four broad areas of mental functioning into subparts. Unless there is no evidence of limitation or insufficient evidence available, each subpart is rated as "Not Significantly Limited," "Moderately Limited," or "Markedly Limited." Under the category of Understanding and Memory, Dr. Dawod rated Plaintiff as moderately limited in the ability to remember locations and work-like procedures; not significantly limited in the ability to understand and remember very short and simple instructions; and markedly limited in the ability to understand and remember detailed instructions. (TR. 507).

Under the category of Sustained Concentration and Persistence, Dr. Dawod found Plaintiff to be moderately limited in the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, the ability to maintain regular attendance and be punctual within customary tolerances, the ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and the ability to perform at a consistent pace without an unreasonable number and length of rest periods. (TR. 507-508). He found her to be markedly limited in the ability to work in coordination with or proximity to others without being distracted by them. (TR. 507).

As for Social Interaction, Dr. Dawod found Plaintiff markedly limited in the ability to interact appropriately with the general public and in the ability to accept instructions and respond appropriately to criticism from supervisors. He found her moderately

limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (TR. 508).

Under the category of Adaptation, Dr. Dawod found Plaintiff markedly limited in the ability to respond appropriately to changes in the work setting and the ability to travel in unfamiliar places or use public transportation. He rated her as moderately limited in the ability to set realistic goals or make plans independently of others. (TR. 508).

Dr. Dawod also completed the narrative section of the form:

> Patient is a 46-year-old female with severe bipolar disorder who is able to perform simple tasks and perform in a familiar setting like her home or interacting with friends but has severe difficulties dealing with new situations or most interactions with the public. Patient has significant difficulty interacting with new people or dealing with new situations. Has severe fear of public places. Has limited attention span and has difficulty with detailed tasks. Patient has frequent panic attacks in new situations or new settings.

(TR. 509).

The ALJ considered Dr. Dawod's Mental Residual Capacity Assessment, finding the narrative portion to be "persuasive" but rejecting the findings of marked limitations in the first part of the form:

> The opinion by Dr. Abdallah [Dawod] in September 2020 does not support the "marked" limitations; however, the narrative assessment regarding the claimant's abilities is persuasive. Dr. Abdallah [Dawod] reported the claimant is able to perform simple tasks; has difficulty dealing with new situations or most interactions with the public; has difficulty interacting with new people and dealing with new situations (but is not precluded from doing so); has limited attention span and difficulty with detailed tasks (Exhibit 11F). Accordingly, the undersigned

7

>finds the narrative portion of Exhibit 11F persuasive as reflected in the residual functional capacity assessment herein.

(TR. 27).

The ALJ's contention that Dr. Dawod's "opinion does not support the 'marked' limitations" is at best unclear and at worst simply wrong. Even the Commissioner concedes, "the ALJ's articulation [in analyzing Dr. Dawod's opinion] was less than ideal." (ECF No. 16:9). The ALJ did not clearly state that Dr. Dawod's findings were unsupported by his own medical records.[4] If the Court were to interpret the ALJ's statement to mean Dr. Dawod's findings of "marked" limitations were inconsistent with his written narrative, the Court would be relying on a post-hoc rationalization to explain the Commissioner's treatment of the evidence—a prohibited practice. See Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself."). What is more, the narrative statement is not substantially dissimilar from the check mark section of the form and does not convince the Court that the ALJ's rejection of Dr. Dawod's assessment is supported by substantial evidence.

Because the Court finds Plaintiff's first assertion of error requires reversal, the Court need not consider Plaintiff's second assertion of error.

---

[4] Rather, the ALJ relied on boiler plate language, reciting that the mental RFC was "supported by the entirety of the evidence of record including the opinions of the State agency medical and psychological consultants as well as the claimant's treatment records." (TR. 27).

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES** the Commissioner's decision and **REMANDS** this case for further proceedings consistent with this Order.

Judgment will be entered in favor of Plaintiff.

ENTERED on April 29, 2022.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE